**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| _____ | : | |
| DAVID YOUNG, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 20-781 |
| | : | |
| GLOUCESTER COUNTY SHERRIFF'S | : | |
| DEPARTMENT and COUNTY OF | : | |
| GLOUCESTER, | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

**MEMORANDUM OPINION**

**Goldberg, J.** [1]                                                                   **March 15, 2023**

Plaintiff David Young brings this action against his employers Defendants County of Gloucester Sheriff's Department ("GCSO") and the County of Gloucester (collectively, "Defendants") pursuant to the Uniformed Services Employment and Reemployment Rights Act of 1994, 34 U.S.C. §§ 4301–4332 ("USERRA"). He alleges that Defendants violated his employment rights following active duty military service by failing to promote him or place him in his prior position following his return from deployment.

Defendants seek summary judgment on the entirety of Plaintiff's Complaint. For the following reasons, I will grant the Motion and enter judgment in favor of Defendants.

## I.    FACTUAL BACKGROUND

For purposes of general background, the following facts are derived from the parties' evidence and statements of facts. Where there is conflicting evidence about a particular fact, Federal

---

[1]         I am handling this case through designation as a visiting judge to the District of New Jersey.

Rule of Civil Procedure 56 requires that I take all facts and evidence in the light most favorable to the non-moving party.[2]

## A.     Administration of the GCSO During the Relevant Time Period

Several administrators at the GCSO played a role in the facts giving rise to Plaintiff's claim. Carmel Morina served as the Sheriff of Gloucester County from 2007 to 2022.  (PSUF ¶ 1; DR ¶ 1.) August Knestaut served as Undersheriff of GCSO from 2013 to 2022 and was responsible for disciplinary matters, contract matters, grievances, and day-to-day operations.   (PSUF ¶¶ 2–3; DR ¶¶ 2–3.) Undersheriff Andre Bay started with the GCSO in 2013 and was responsible for the Warrants Unit and the Transportation Unit.  (PSUF ¶¶ 4–5; DR ¶¶ 4–5.)  Lieutenant Barry Fell oversaw judicial security and served as Plaintiff's direct supervisor.  (PSUF ¶¶ 6–8; DR ¶¶ 6–8.)

## B.     Plaintiff's Employment and Military Leave

In June of 2007, Plaintiff was hired as a Sheriff's Officer with the GCSO.  (DSUF ¶¶ 1–2; PR ¶¶ 1–2.)  As of early 2017, Plaintiff worked as a Sheriff's Officer in GCSO's Transportation Unit on a shift that comprised eighty-four hours every two weeks.  (DSUF ¶ 3; PR ¶ 3.)

In the summer of 2014, Plaintiff was on active military duty for approximately three months. (PSUF ¶ 128; DR ¶ 128.)  On April 26, 2017, Plaintiff was again deployed to active military service beginning April 26, 2017, and originally ending in April 2019.  (DSUF ¶ 4; PR ¶ 4.)  Subsequently, Plaintiff's Military Leave was extended to June 2019.  (DSUF ¶ 5; PR ¶ 5.)

Prior to his April 2017 deployment, Plaintiff sold his residence at 6 Hickory Lane in Mullica Hill, New Jersey and filed a change of address with the United States Postal Service.  (DSUF ¶ 39; PR ¶ 39.) Plaintiff also notified the U.S. Postal Service that he wanted his mail forwarded to 1807 W. Picadilly Lane in Hanford, California.  (DSUF ¶ 40; PR ¶ 40.)  Plaintiff did not change his address with the Civil

---

[2]     I will, where possible, refer solely to Plaintiff's Statement of Undisputed Facts ("PSUF"), Defendants' Response ("DR"), Defendants' Statement of Undisputed Facts ("DSUF"), and Plaintiff's Response ("PR").   If a statement is disputed and the dispute can be easily resolved by reference to the exhibits, I will cite the supporting exhibits. If a statement is disputed, but the dispute cannot be resolved by reference to the exhibits, I will note the dispute without resolving it.  I will not rely on any statement of fact that is unsupported by reference to a specific exhibit.

Service Commission until almost two years later, on February 14, 2019.  (Defs.' Ex. D-15; Defs.' Ex. D-10, Dep. of Michelle Karngbaye ("Karngbaye Dep.") 24:10–14; DSUF ¶¶ 42–43; PR ¶¶ 42–43.)

### C.     The GCSO's 2019 Promotion of Randolph Broadbent

Gloucester County and the GCSO are civil service entities, and, as such, promotions are governed by New Jersey's civil service laws, as administered by the New Jersey Civil Service Commission ("NJCSC").  (DSUF ¶ 7; PR ¶ 7.)  The stated purpose of the NJCSC is to advance the New Jersey government with fair and efficient human resources responsive to the needs of the Civil Service workforce.  (DSUF ¶ 8; PR ¶ 8.)

Under the civil service laws, in order for the GCSO to make a promotion, it must first request an eligibility list generated by the NJCSC, and then make an appointment off of that list.  (DSUF ¶¶ 10–11; PR ¶¶ 10–11.)  Once an employer requests an eligibility list, the NJCSC is responsible for providing notice to the listed individuals, via a Notice of Certification, that the employer is seeking to make a promotion.  (DSUF ¶ 14; PR ¶ 14.)  Within five days of the date of the Notice of Certification, an eligible employee must submit his/her Letter of Interest to the employer.  (DSUF ¶ 15; PR ¶ 15.)   The "Certification Date" on the Notice is the date that the notifications are printed and mailed out by the NJCSC to the persons on the list.  (DSUF ¶ 16; PR ¶ 16.)  The contact information utilized by the NJCSC for issuing the Notices is based on the data available for each candidate in NJCSC's files as of the Notice date.  (DSUF ¶ 17; PR ¶ 17.)  The system then generates the Notice of Certification that includes the candidate's name and address, and the Notice of Certification is mailed to the individual by the NJCSC. (Id.)  If an eligible employee fails to contact the appointing authority in writing within five days to express interest for the promotion, the employee's name may be removed from the eligible list.  (DSUF ¶ 18; PR ¶ 18.)

In February 2019, the GCSO notified the NJCSC that it desired to promote an individual for the position of Sergeant from within the GCSO.  (DSUF ¶ 6; PR ¶ 6.)  The NJCSC generated an eligibility list, dated February 13, 2019, with the following candidates' names in order based on merit testing

3

administered by NJCSC in 2016: (1) Douglas Daniels (non-veteran); (2) Christopher Senor (non-veteran); (3) Plaintiff (veteran); (4) Randolph Broadbent (veteran); and (5) Edward Nailor (veteran). (DSUF ¶¶ 12–13; PR ¶¶ 12–13.)

On February 13, 2019, the NJCSC began issuing notices to the persons on the eligibility list for GCSO's Sergeant position.  (DSUF ¶ 16 PR ¶ 16.)  The Notice of Certification was dated February 21, 2019, and all eligible candidates were required to submit their Letter of Interest to the GCSO within five days of that date.  (DSUF ¶ 19; PR ¶ 19.)  After the Notices were sent to the candidates on the list, Christopher Senor did not respond, and GCSO requested that he be removed from the eligibility list. (DSUF ¶ 20; PR ¶ 20.)  As a result, the Certificate of Eligible for Appointment—the final document executed by the County at the conclusion of the selection process and sent to NJCSC for promotion—marked Senor with the code of "M4" meaning that he was removed from the list.  (DSUF ¶ 21; PR ¶ 21.)

The Notification of Certification for the February 2019 Promotional List was mailed before Plaintiff updated his address with the Civil Service Commission.  (DSUF ¶ 44; PR ¶ 44.)  As a result, Plaintiff did not receive the Notice of Certification at his California address and did not respond by the required date of February 26, 2019.  (DSUF ¶ 45; PR ¶ 45.)  Nonetheless, Plaintiff was still considered for the promotion because officers at GCSO were aware of his interest.  (Defs.' Ex. D-33, Dep. of August Knestaut ("Knestaut Dep.") 114:6–19; Defs.' Ex. D-24.)

The updated Promotional List—with Senor removed—showed the first three eligible candidates for the Sergeant position ranked as follows: (1) Douglas Daniels (non-veteran); (2) Plaintiff (veteran); and (3) Randolph Broadbent (veteran). (DSUF ¶ 22; PR ¶ 22.)  Under the "Rule of Three," an appointing authority may appoint any one of the top three interested eligibles to a permanent position.  (Defs.' Ex. D-16.)  Based on this Rule of Three, the GCSO elected to promote Officer Randolph Broadbent to the Sergeant position.  (DSUF ¶ 25; PR ¶ 25.)  Broadbent was marked on the final Certification of Eligible document as "A-4," which meant he was appointed from a Promotional List.  (Defs.' Exs. D-24, D-25.)

Daniels and Plaintiff were both marked "I2" which means "Retain – Interested – Others appointed (reachable for appointment)."  (Id.; Defs.' Ex. D-24.)

Although Broadbent was also a veteran, he was never deployed for active military service during his employment with GCSO and had only been required to attend active duty training one weekend a month and two weeks a year.  (PSUF ¶ 33; DR ¶ 33; Pl.'s Ex. E, Cert. of Randolph Broadbent ("Broadbent Cert.") ¶ 5.)  At the time of his promotion to Sergeant, Broadbent was no longer an active reservist.  (Id. at ¶ 8.)  In addition, Officer Broadbent had twenty months less seniority than Plaintiff.  (Pl.'s Ex. M.)

During their depositions, the three decisionmakers—Sheriff Morina, Undersheriff Broadbent, and Undersheriff Bay—offered their reasons for promoting Broadbent.  Sheriff Morina explained that, in making promotions, he relied upon recommendations from Undersheriff Knestaut and Undersheriff Bay, as well as the captains and lieutenants in the department.  (PSUF ¶¶ 10–11; DR ¶¶ 10–11.)  He testified that the important factors in promoting individuals include leadership and overall job performance.  (PSUF ¶ 17; DR ¶ 17.)  He believed that Broadbent was "by far the better officer . . . as far as the feedback that [he] was receiving and just . . . how he approached people out in the public." (Pl.'s Ex. A, Dep. of Carmel Morina ("Morina Dep.") 26:19–27:3.)  In addition, Sheriff Morina noted that Broadbent excelled in report writing and did a "great job" in making sure that every report was on time during his shift.  (Id. at 30:3–9.)  According to Morina, Lt. Fell—Plaintiff's supervisor—was "very high" on Broadbent.  (Id. at 32:11–14.)  Morina indicated that Plaintiff was skipped over simply because he was "the second best officer on the list."  (Id. 32:17–19.)

Andre Bay, former chief of GCSO, testified that Broadbent's efforts to seek additional training and schooling reflected positively.  (Defs.' Ex. D-28, Dep. of Andre Bay ("Bay Dep.") 25:16–26:1.)  Bay went on to explain that Broadbent was selected for the promotion because he "was the best candidate all together . . . [and was] far above and beyond any other candidates on that list." (Bay Dep. 9:8–19.)  Bay indicated that he was considered a rising star because his attendance was "perfect," he was a military reservist which "never hurt his chances for a promotion," and he was an "outstanding supervisor."  (Id.

5

at 26:12–20.)  Bay understood that Plaintiff was passed over, not because he was a bad employee, but because Broadbent was simply the best candidate.  (Bay Dep. 32:5–17.)

Consistently, former Undersheriff Knestaut believed that although Plaintiff was qualified, Officer Broadbent was a superior candidate with regard to his leadership and supervisory skills.  (Defs.' Ex. D-33, Dep. of August Knestaut ("Knestaut Dep.") 14:14–19, 69:16–71:10.)   Knestaut indicated that, although Plaintiff was on deployment at the time of the promotion, the decisionmakers "had a pretty good base of knowledge" regarding Plaintiff's qualifications from prior to his deployment, and they received no negative input from supervisors.  (Id. at 71:14–72:4; PSUF ¶ 41; DR ¶ 41.)  He also remarked that Young's attendance record was not vastly different from Broadbent's, but "[a]ll things being equal, we though Officer Broadbent just had some superior abilities to be a good leader and supervisor."  (Knestaut Dep. 70:6–8, 71:5–10.)  Finally, Knestaut testified that even though the decision to promote Broadbent was made even before receipt of Plaintiff's belated letter of interest, Plaintiff was considered based on his previous communication of interest to Lieutenant Fell.  (Id. 114:6–19.)

NJCSC's corporate representative testified that Broadbent's appointment was appropriate under the Rule of Three because Plaintiff was retained on the eligibility list and the lower ranked eligible was also a veteran.  (Defs.' Ex. D-12, Dep. of Allison Myers ("Myers Dep.") 42:1–43:1.)  Under the Civil Service Guidelines, in this scenario, any of the top three interested candidates could have been offered the promotion.  (DSUF ¶ 37; PR ¶ 37.)  She explained that the only way a veteran's appointment is mandated under the Veteran's Preference Law is if they head the list, i.e., they achieved the highest score. (Id. at 41:8–12; see also DSUF ¶ 35; PR ¶ 35.)

### D.   Address Updates With The NJCSC

As explained above, in the event of a promotion opportunity, the NJCSC sends a Notification of Certification for a particular position to all persons on the Eligibility List by regular mail to the last known address of the person.  (Defs.' Ex. D-2, Dep. of David Young ("Young Dep.") 11:20–12:22.)  The eligible employee bears the responsibility of ensuring that his or her address and last known residence

information is updated with the NJCSC, and the promoting agency has no obligation to inform the NJCSC of an employee's residence.  (Young Dep. 13:3–14.)

Four corporate representatives for NJCSC testified also regarding these obligations.  (DSUF ¶ 54; PR ¶ 54.)  Allison Chris Myers, the NJCSC's Director of the Division of Appeals and Regulatory Affairs explained that, under N.J.A.C. 4A:3.2(e), it is the responsibility of an eligible employee to keep his or her address current with the NJCSC.  (DSUF ¶ 58–59.)  She indicated that any information provided by an employer regarding an individual's change of address would not be accepted by the NJCSC. (DSUF ¶ 60; PR ¶ 60.)  Michelle Karngbaye, the customer service supervisor for the NJCSC, testified that as of February 13, 2019, the Commission's records had Plaintiff's address as 6 Hickory Lane, Mullica Hill, New Jersey 08062, and that is where Plaintiff's Notice of Certification was sent.  (DSUF ¶¶ 66–67; PR ¶¶ 66–67.)  It was not until February 14, 2019—after the February 13, 2019 Certification— that Plaintiff's address was updated to the California residence.  (DSUF ¶ 70; PR ¶ 70.)  Michael Johnson, the NJCSC's Director of the Division of Test Development, Analytics and Administration, likewise indicated a local civil service agency has no obligation to notify the NJCSC of an individual's change in address.  (DSUF ¶¶ 77–78; PR ¶¶ 77–78.)  He explained that simply having mail forwarded from the United States Postal Service is insufficient.  (DSUF ¶¶ 79–80; PR ¶¶ 79–80.)  Finally, NJCSC Director of the Division of Agency Services, Kelly Glenn, explained that the Certification of Eligibility List is composed of candidates who have successfully passed a promotion examination for a specific job title, and it ranks candidates based on the applicant's residency, veterans' status, and final average.  (DSUF ¶¶ 86–87; PR ¶¶ 86–87.)  Glenn testified that the GCSO has no obligation to reach out to an eligible employee on the list and notify them of an intended appointment.  (DSUF ¶ 95; PR ¶ 95.)

E.      **The GCSO's 2018 Promotional Announcement for the Sergeant Examination**

On November 1, 2018, the NJCSC issued a statewide Promotional Announcement—*i.e.*, an announcement notifying the members of a civil service agency that there is an opportunity for employees to apply to take a promotional test—for the position of Sergeant.  (DSUF ¶¶ 98–99; PR. ¶¶ 98–99.)  The

7

2018 Promotional Announcement provided an issue date of November 1, 2018 and a closing date of November 21, 2018, and established that the examination was "tentatively scheduled to be administered in May 2019." (DSUF ¶¶ 100–01; PR ¶¶ 100–01.)  It stated that all "[a]pplications must be completed and submitted by <u>4:00PM</u> on [November 21, 2018]." (DSUF ¶ 102; PR ¶ 102 (emphasis omitted).)  A person seeking to take a civil service test must have both an accurate email address and an accurate mailing address. (DSUF ¶ 104; PR ¶ 104.)

The GCSO circulated the NJCSC's statewide Promotional Announcement to GCSO employees by email, through GCSO's PowerDMS system, and on bulletin boards and other such locations throughout the multiple Sheriff Office locations in the County. (DSUF ¶ 105; PR ¶ 105.)  Plaintiff, who was on Military Leave at the time, was listed as a recipient of the Promotional Announcement that was sent by email. (DSUF ¶ 106; PR ¶ 106.)  Plaintiff contends that although his County email account remained active, he was unable to access his email while deployed due to service issues at his place of deployment. (DSUF ¶¶ 107–12; PR ¶¶ 107–12.)  When Plaintiff was finally able to access his email, he had, in fact, timely received the email notification of the Promotional Announcement. (Young Dep. 41:17–23, 46:2–13; Defs.' Ex. D-13, Resp. to Interrog. No. 17; Defs.' Ex. D-22, March 27, 2019 email.)

The Promotional Announcement was also put on GCSO's PowerDMS system.  PowerDMS is a document-sharing software that allows the GCSO to upload orders, memoranda or other communications for the Sheriff's Officers to view. (DSUF ¶ 117; PR ¶ 117.)  The PowerDMS Event Log records an individual's attempts to log onto his/her PowerDMS account and reflects the device and IP address from where they are logging in. (DSUF ¶ 119; PR ¶ 119; PSUF ¶¶ 58–61; DR ¶¶ 58–61.)

During Plaintiff's Military Leave, from April 26, 2017 through July 2019, GCSO Detective Will Tappin had administrator access in the PowerDMS system and was responsible for publishing training information through PowerDMS. (PSUF ¶¶ 64–70; DR ¶¶ 64–70.)  According to the Event Log, on November 26, 2018, Detective Tappin terminated Plaintiff's PowerDMS. (Defs.' Ex. G; Pl.'s Ex. B, Dep. of Will Tappin ("Tappin Dep.") 21:21–22:21.)  While Tappin could not remember what exactly he

was doing in Plaintiff's account, he speculated that he may have disabled it to avoid Plaintiff getting multiple notifications about trainings while he was on extended military leave.  (Tappin Dep. 23-28.)

Prior to the termination of his account, Plaintiff had access to PowerDMS on his phone while on deployment.  (Defs.' Ex. D-22, email of March 27, 2019.)  Plaintiff successfully logged onto his PowerDMS during his deployment, on June 2, 2017, but did not attempt to log onto to his PowerDMS again until March 15, 2019.  (DSUF ¶¶ 120–22; PR ¶¶ 120–22.)  The announcement for promotional testing was posted in PowerDMS on November 2, 2018 and had a closing date of November 21, 2018, meaning it had closed before his access to PowerDMS was terminated.  (DSUF ¶¶ 100–01; PR ¶¶ 100–01.)  Ultimately, Plaintiff did not view the Promotional Announcement on PowerDMS until July 26, 2019.  (DSUF ¶ 123; PR ¶ 123.)

On March 20, 2019, Plaintiff informed the NJCSC that he had been on military leave, "had limited email connectivity with [his] agency and missed the [2018] Promotional Announcement," and, as a result, was unable to respond by the November 21, 2018 closing date.  (DSUF ¶ 124; PR ¶ 124.)  Plaintiff made a request to the NJCSC to allow him to take the promotional exam in May 2019 or get a late exam when he returned from active duty as of June 29, 2019.  (DSUF ¶ 125; PR ¶ 125.)  The NJCSC noted that Plaintiff's military leave was not recorded in his employment history.  (Defs.' Ex. 22, email of March 20, 2019.)  On August 9, 2019, Plaintiff's request to file an application for the Sheriff's Office Sergeant promotional make-up examination was approved.  (DSUF ¶ 126; PR ¶ 126.)  Subsequently, Plaintiff sat for the Sergeant promotional make-up examination in May of 2021.  (DSUF ¶ 127; PR ¶ 127.)

**F.      Plaintiff's Assignment Upon Return from Military Leave**

Prior to his military leave in 2017, Plaintiff was working a twelve-hour shift assignment consisting of eighty-four hours every two weeks.  (DSUF ¶ 128; PR ¶ 128; Knestaut Dep. 160:11–21.)  The Sheriff's Office has a limited number of twelve-hour shifts that are awarded on an annual basis following a bidding process set forth in the Collective Bargaining Agreement for Sheriff's Officers.

Those working twelve-hour shift assignments are paid eighty-four hours per pay period, as opposed to those on eight-hour shifts that are paid for eighty hours per pay period. (Defs.' Ex. D-14, Suppl. Decl. of August Knestaut ("Knestaut Decl.") ¶¶ 3–5.) There is no guarantee that a sheriff's officer will be awarded a bid for a twelve-hour shift, even if they received one the year before, since bidding is not based on seniority, but rather on prior year attendance, prior disciplinary history, and other criteria. (Id. ¶ 10.)

In November 2015 and November 2016, Plaintiff successfully bid on and was awarded a twelve hour day shift for 2016 and 2017 respectively. (Id. ¶ 6.) Again, in November 2016, Plaintiff bid on and was awarded the 2017 twelve-hour day shift. (Id.) During his deployment, however, Plaintiff did not inquire with the GCSO about the bidding process for twelve-hour shifts and missed the bidding processes for both 2018 and 2019. (Id. ¶ 8; DSUF ¶ 138; PR ¶ 138.) As such, when Plaintiff returned, all of the twelve-hour shifts were taken, and any attempt to pull an officer from such a shift to make room for Plaintiff may have resulted in an immediate grievance under the Collective Bargaining Agreement. (Knestaut Decl. ¶ 9; Bay Dep. 64:22–65:16.) Plaintiff still retained the rank and position of Sheriff's Officer and was assigned to the Courthouse Security Unit. (DSUF ¶ 129; PR ¶ 129.) In that assignment, he worked eighty hours per pay period but kept the same per hour rate of pay. (DSUF ¶ 135; PR ¶ 135.)

In November 2019, Plaintiff had the opportunity to bid for a twelve-hour shift assignment and was awarded that assignment for 2020. (DSUF ¶ 146; PR ¶ 146.) In early 2022, Plaintiff was promoted to Sergeant within the GCSO. At that time, Morina, Bay, and Knestaut were no longer employed by the GCSO. (DSUF ¶ 147; PR ¶ 147; Pl.'s Ex. U.)

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 states, in pertinent part:

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and

> the movant is entitled to judgment as a matter of law.  The court should
> state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56(a).  "Through summary adjudication, the court may dispose of those claims that do not present a 'genuine dispute as to any material fact' and for which a jury trial would be an empty and unnecessary formality."  Capitol Presort Servs., LLC v. XL Health Corp., 175 F. Supp. 3d 430, 433 (M.D. Pa. 2016).  A factual dispute is "material" if it might affect the outcome of the suit under the applicable law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  An issue is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party.  Id.

The initial burden is on the moving party to adduce evidence illustrating a lack of genuine, triable issues.  Hugh v. Butler Cnty. Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005).  Once the moving party satisfies its burden, the non-moving party must, in rebuttal, present sufficient evidence of a genuine issue.  Santini v. Fuentes, 795 F.3d 410, 416 (3d Cir. 2015).  The court must then resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party.  Saldana v. Kmart Corp, 260 F.3d 228, 232 (3d Cir. 2001).  Summary judgment is appropriate if the non-moving party provides merely colorable, conclusory or speculative evidence.  Anderson, 477 U.S. at 249.  There must be more than a scintilla of evidence supporting the non-moving party and more than some metaphysical doubt as to the material facts.  Id. at 252.  Unsubstantiated arguments made in briefs are not considered evidence of asserted facts.  Versarge v. Twp. of Clinton, 984 F.2d 1359, 1370 (3d Cir. 1993).   Moreover, "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions."  Gans v. Mundy, 762 F.2d 338, 241 (3d Cir. 1985) (citing Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981)).

## III.    DISCUSSION

Congress enacted USERRA in 1994 in part to "encourage noncareer service in the uniformed services by eliminating or minimizing the disadvantages to civilian careers and employment which can

result from such service." Carroll v. Del. River Port Auth., 843 F.3d 129, 131 (3d Cir. 2016) (quoting

38 U.S.C. § 4301(a)(1)).  USERRA "prohibit[s] discrimination against persons because of their service

in the uniformed services." 38 U.S.C. § 4301(a)(3).  The operative section of this Act provides:

> A person who is a member of, applies to be a member of, performs, has
> performed, applies to perform, or has an obligation to perform service in
> a uniformed service shall not be denied initial employment,
> reemployment, retention in employment, promotion, or any benefit of
> employment by an employer on the basis of that membership, application
> for membership, performance of service, application for service, or
> obligation.

38 U.S.C. § 4311(a).  An employer violates USERRA if "the person's membership [in the military] is a

motivating factor in the employer's action." Id. 4311(c)(1).  The employer will not be in violation of the

Act, however, if "the employer can prove that the action would have been taken in the absence of such

membership." Id.

   By its own terms, USERRA "establishes a two-step burden-shifting framework by which to

analyze such claims." Murphy v. Radnor Twp., 542 F. App'x 173, 176 (3d Cir. 2013)  "First, the plaintiff

alleging the discriminatory act bears the initial burden of showing that the 'employee's military service

was a substantial or motivating factor in the adverse employment action.'" Id. (quoting Sheehan v. Dept.

of Navy, 240 F.3d 1009, 1013 (Fed. Cir. 2001)).  "A motivating factor does not mean that it had to be

the sole cause of the employment action.  Instead, it is one of the factors that a truthful employer would

list if asked for the reasons for its decision.  Indeed, [m]ilitary status is a motivating factor if the defendant

relied on, took into account, considered, or conditioned its decision on that consideration." Id. (quoting

Coffman v. Chugach Support Servs., Inc., 411 F.3d 1231, 1238 (11th Cir. 2005)) (alteration in original).

A plaintiff "need *not* plead or prove that [he or she is] objectively qualified in order to meet his or her

initial burden under USERRA." Carroll, 843 F.3d at 132 (emphasis in original).  Qualifications only

become relevant to the second prong of whether the employer acted for a nondiscriminatory reason. Id.

   Thereafter, if the plaintiff meets his/her burden of showing that military service was a substantial

or motivating factor for discrimination, the burden shifts to the employer to prove that, regardless of the

plaintiff's military service, it would have taken the adverse action.  Murphy, 542 F. App'x at 177.  This is a "but for" standard of proof.  Id.  "All that is meant [by this standard] is that if the [employer] had two reasons for taking an adverse action against the [employee], one of them forbidden by statute and the other not, and the [employer] can show that even if the forbidden one had been absent the adverse action would still have been taken, the [employee] loses."  Id. (quoting Madden v. Rolls Royce Corp., 563 F.3d 636, 638 (7th Cir. 2009)).  "Under USERRA, the employer does not merely have the burden of producing a legitimate, non-discriminatory reason; rather the employer has the burden of producing a legitimate reason for the adverse employment action that is so overwhelming, 'so compelling,' and 'so meagerly contested' that there is no genuine dispute that the employee would have received the same treatment regardless of his future military obligations."  Murphy, 542 F. App'x at 178 (quoting Madden, 563 F.3d at 638).  A plaintiff may create an inference of discrimination through circumstantial evidence that involves a variety of factors including "proximity in time between the employee's military activity and the adverse employment action, inconsistencies between the proffered reason and other actions of the employer, an employer's expressed hostility towards members protected by the statute together with the knowledge of the employee's military activity, and disparate treatment of certain employees compared to other employees with similar work records or offenses."  Id. at 177–78 (quotations omitted).

Notably, under USERRA, the employee does not have the burden of demonstrating that the employer's stated reason is a pretext.  Instead, "the employer must show, by a preponderance of the evidence, that the stated reason was *not* a pretext; that 'the action *would* have been taken in the absence of [the person's military service.'"  Velazquez-Garcia v. Horizon Lines of Puerto Rico, Inc., 473 F.3d 11, 17 (1st Cir. 2007) (quoting 38 U.S.C. § 4311) (emphasis in original).

Here, Plaintiff alleges USERRA violations with respect to three events:  (1) the February 2019 promotion; (2) the May 2019 promotional test; and (3) his return to work following his tour of duty.  Defendants move for summary judgment on all of these claims.  For all of these alleged violations, I find that Plaintiff has failed to meet his burden at the first step of the USERRA analysis.

A.      **The February 2019 Promotion**

As set forth above, Plaintiff did not receive a promotion to sergeant during the February 2019 promotional opportunity.  He now posits that several of Defendants' discrete actions in connection with that promotion were motivated by improper discriminatory animus due to his military service.

1.      Failure to Provide Proper Notice

First, Plaintiff alleges that Defendants failed to give him proper notice of the 2019 promotion. He reasons that because Defendants failed both to report his  deployment to the NJCSC and to update their records with Plaintiff's change of address information, he was deprived of the opportunity to receive notice.

Plaintiff's argument does not create a triable issue of fact for purposes of summary judgment.  As noted above, in order for the GCSO to make a promotion, it must request an updated eligibility list from the NJCSC.  Once the list is generated, the NJCSC sends a notice to all persons on the list at their last known addresses.  The contact information utilized by the NJCSC for issuing the notices is based on all the data available for each candidate in NJCSC's files as of the date of the notice.  A Notification of Certification for a particular position is sent by the NJCSC to all persons on the eligibility list by regular mail to the last known address of the person.  (Defs.' Ex. D-2, Dep. of David Young ("Young Dep.") 11:20–12:22.)

Plaintiff admitted, however, that (a) he bore the responsibility of ensuring that his or her address and last known residence information was updated with the Civil Service Commission, and (b) the GCSO did not have an obligation to inform the NJCSC of an employee's residence.  (Id. at 13:3–14.)  Four corporate representatives for the NJCSC likewise testified that it is the responsibility of the eligible employee to keep his or her address current with the NJCSC.

Moreover, the evidence is undisputed that even had Defendants attempted to report Plaintiff's deployment and change of address to the NJCSC, Plaintiff still would not have received any Notice of Certification at his California residence.  The parties agree and the evidence supports that the NJCSC is

14

responsible for providing notice to the listed individuals that the employer is seeking to make a promotion. The NJCSC will not change an individual's address based upon information received from an employer, and the NJCSC relies solely on the address on file as of the date of the Notification. Indeed, a local service agency such as the GCSO has no obligation to notify the Civil Service Commission of an individual's change in address, nor does it have any obligation to reach out to an eligible employee on the list and notify them that an employer intends to make an appointment off of the list.

Most notably, even if Plaintiff's failure to receive the Notice of Certification could somehow be imputed to Defendants, the evidence reflects that, despite his failure to timely respond with a letter of interest, Plaintiff was actually put on the eligibility list. When Plaintiff was passed over in favor of Broadbent, Plaintiff was marked "I2," meaning "Retain – Interested – Others appointed (reachable for appointment)." (DSUF ¶ 22; PR ¶ 22.) In other words, despite his untimely-submitted letter of interest, Plaintiff was deemed eligible for the position.

Given this undisputed evidence, no reasonable jury could find that Defendants' failure to update Plaintiff's address and send him a Notification of Certification reflects their discriminatory animus.

        2.    <u>Failure to Actually Consider Plaintiff for the Promotion</u>

Plaintiff next posits that even though he was put on the promotional list, he was not actually considered for the promotion, claiming that the "consideration" given by Defendants was "nothing more than lip service" because the promotional spot was filled by Broadbent prior to Defendants receiving Plaintiff's letter of interest. (Pl.'s Resp. Opp'n Summ. J. 8.) In support of this argument, Plaintiff cites to Undersheriff Bay's testimony that he had no discussions with Knestaut and Morina about Plaintiff's qualification for the sergeant position, but rather "[i]t was just how can we get to Broadbent." (Bay Dep. 34:6:–9.)

Again, Plaintiff's argument fails to create a triable issue of fact on two grounds. First, Bay actually testified that Plaintiff was considered but simply was not the superior candidate. (Bay Dep. 32:5–34:9.) Plaintiff presents no contradictory evidence or testimony allowing the reasonable inference

that he was never considered.  Absent such evidence, Plaintiff's mere suggestion that a jury could

disbelieve the various GCSO officers' testimony is insufficient to defeat summary judgment.  Pino v.

Carey, No. 15-cv-1172, 2016 WL 8849028, at *8 (M.D. Pa. Dec. 16, 2016) (finding that mere denials of

facts and an invitation to discredit the defendants are "inadequate in our view to create a material issue

of fact which precludes summary judgment").  Second, even to the extent that Defendants were

immediately focused on Broadbent, such interest in a superior candidate does not allow for any inference

that the decreased interest in Plaintiff was due to his military service.

### 3.    Failure to Promote Plaintiff Over Broadbent

Finally, Plaintiff contends that a reasonable jury could find that Defendants' reasons for the

promotion of Officer Broadbent over Plaintiff were premised on animus towards his military deployment.

Plaintiff, however, has not adduced any evidence to support a conclusion that his military service was a

substantial or motivating factor for this decision.  Putting aside the fact that Defendants did not need to

consider Plaintiff for the February 2019 promotion due to his failure to timely submit his letter of interest,

the decisionmakers repeatedly offered consistent testimony regarding their reasons for the promotion of

Broadbent, who himself was a veteran, over Plaintiff:

- Sheriff Morina testified that Broadbent was chosen because he "was the better officer as far as
  the feedback that [he] was receiving and just people in general, how he approached people out in
  the public." (Morina Dep. 26:25–27:23.)  People told Morina that Broadbent had outstanding
  sergeant potential and that he would go above and beyond what he had to do.  (Id. at 27:7–12.)
  Morina also got feedback from Knestaut and Bay that Broadbent excelled in report writing,
  always made sure everything was done in time when he supervised a shift, and was well liked.
  (Id. at 29:22–30:24.)  Morina then explained that Plaintiff was considered a good guy and a good
  officer, but Broadbent was simply a better choice.  Plaintiff was simply the "second best officer
  on the list," while Broadbent was the first.  (Id. at 30:25–32:19.)

- Undersheriff Bay testified in like fashion.  He stated, "Randolph Broadbent was the best
  candidate all together.  I make no—Dave Young is not a bad employee.  I have never known him
  to be a, you know, anything super bad, but this guy is far above and beyond any other candidates
  on the list . . . . [Plaintiff] was skipped because Randolph Broadbent was the best candidate."
  (Bay Dep. 32:8–17; 37:13–16.)

- Finally, Undersheriff Knestaut recalled that there was no particular reason that Plaintiff was not
  selected "other than Officer Broadbent was a superior of the two."  (Knestaut Dep. 69:16–23.)
  Specifically, Knestaut referred to Broadbent's leadership and supervisory skills.  He remarked

that he and Bay "just felt like of the two, there wasn't anything wrong necessarily with Officer Young.  All things being equal, we thought Officer Broadbent just had some superior abilities to be a good leader and supervisor."  (Id. at 70:3–8.)

In the face of this evidence, Plaintiff offers several arguments to establish that Defendant relied on, took into account, considered, or conditioned their decision on Plaintiff's military service.  First, Plaintiff contends that Defendant's reasons for promoting Officer Broadbent directly implicate Plaintiff's military deployment.  Specifically, Plaintiff notes that, in determining that Broadbent was the best candidate, Defendants remarked on Broadbent's "flawless" attendance records and his positive performance as an acting sergeant.  Plaintiff claims that, as he was on deployment, he did not have the opportunity to have such stellar attendance or to serve as an acting sergeant.

Plaintiff, however, cites to no authority suggesting that USERRA requires an employer to disregard another candidate's exemplary work record when that record was obtained during the plaintiff's deployment.[3]  Moreover, it is undisputed that Plaintiff had been employed with the GCSO for approximately ten years prior to his 2017 deployment and had ample opportunity to demonstrate his qualifications.  Indeed, all of the decisionmakers believed Plaintiff to be perfectly qualified.  Broadbent was simply able to distinguish himself as the superior candidate by not only his attendance and performance as an acting sergeant, but also the positive reviews from superiors and the public, demonstrated leadership, his good report writing, and his efforts to obtain additional schooling/training.

---

[3]     Plaintiff also attempts to argue that Broadbent was not in the same protected class under USERRA because he was a veteran who had been released from active duty, while Plaintiff was active duty.  Plaintiff contends that "at the point of promotions in February 2019, Plaintiff was protected by USERRA, and Officer Broadbent was not.  They were not members of the same protected class. Broadbent was not part of the class of persons protected under USERRA." (Pl.'s Resp. Opp'n Summ. J. 12.)
    Plaintiff is incorrect.  One of the stated purposes of USERRA is "to prohibit discrimination against persons because of their service in the uniformed services." 38 U.S.C. § 4301(a)(3).  Although a person's entitlement to benefits under USERRA is terminated for dishonorable discharge or a separation under other than honorable conditions, USERRA says nothing about termination of benefits due to an honorable discharge or the assumption of inactive status. 38 U.S.C. § 4304.  The statute goes on to provide that "[a] person who is a member of, applies to be a member of, performs, *has performed*, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation." 38 U.S.C. § 4311(a) (emphasis added).  Indeed, USERRA protects individuals who do not currently perform service in the uniformed services. 20 C.F.R. § 1002.20.

Nothing in the record allows an inference that Plaintiff was penalized for his absence during his military service.

Plaintiff also contends that Defendants offered contradictory promotional considerations. Specifically, he notes that Sheriff Morina testified that one reason Broadbent was selected over Plaintiff because Lieutenant Fell was "very high" on Broadbent, (Morina Dep. 32:11–14), while Lt. Fell did not recall ever being approached regarding his input or recommendation for promotions.  (Pl.'s Ex. B, Dep. of Lt. Barry Fell ("Fell Dep.") 30:2–5, 39:15–23.)  Plaintiff asserts that a reasonable jury could find that this contradictory testimony could be a basis for a jury to conclude that Defendants' reasons for promoting Officer Broadbent were mere pretext.

Plaintiff mischaracterizes the evidence.  Fell never testified that he was not asked about his opinions of or experiences with other officers.  Rather, he explained that he was never involved with the administration's discussions *regarding promotions* and that Undersheriff Bay never approached him asking for his preference on who to promote.  (Id. at 29:22–9, 39:15–23.)  Consistent with that testimony, Undersheriff Knestaut clarified that "[w]e did speak with all of our lieutenants and captains with regard to all of them just getting general information.  Not should we promote him as opposed to him.  It wasn't those kind of questions.  It was tell us about, in your experience with this officer . . ."  (Knestaut Dep. 34:22–35:2.)

Finally, Plaintiff contends that the GCSO has longstanding animus towards officers' military service.  In support, he cites to a 2014 incident involving Undersheriff Bay and Officer Richard Hanratty, a veteran of the United States Air Force who currently serves in the Air Force.[4]  (Pl.'s Ex. I, Dep. of Richard Hanratty ("Hanratty Dep.") 10:2–11.)  Hanratty testified that, in 2014, he had been applying for additional specialized training and schooling, when he was approached by Undersheriff Bay.  Bay said

---

[4]      Plaintiff also references a USERRA complaint filed against the GCSO by an Officer Monaghan, but other than mere mention of the suit, he provides no details about it, such as nature of the complaint, date, or resolution.  He provides no testimony from Officer Monaghan and no information about how it bears on his own case.

that he appreciated Hanratty's enthusiasm, but his being in the military was going to affect his ability to get any such training because "how can [he] expect the department to train [him] or give [him] a bided [sic] position when [he is] not going to be here."  (Id. at 19:8–24:4; Ex. J.)  According to Hanratty, Bay used Plaintiff as an example noting that Plaintiff had been on military leave during the summer of 2014 and if he were to bid on an opening, the GCSO would not be able to give it to him because they know he is never there.  (Pl.'s Ex. J.)

Even taking this evidence as true,[5] I find Plaintiff still has not met his burden of offering evidence of discrimination under USERRA.  The United States Court of Appeals for the Third Circuit has held that "[s]tray remarks by non-decisionmakers or by decision-makers unrelated to the decision process are rarely given great weight, *particularly if they were made temporally remote from the date of decision.*" Ezold v. Wolf, Block, Schor & Solis-Cohen, 983 F.2d 509, 545 (3d Cir. 1992) (emphasis added).  Courts applying this principle have found that temporally-distant remarks are too remote to satisfy the causal link.  See, e.g., Tranter v. Crescent Twp., 625 F. Supp. 2d 298, 303–304 (W.D. Pa. 2007) (granting summary judgment for defendant where statements by a decisionmaker ten years earlier too remote to satisfy the causal link under USERRA); Gannon v. Nat'l R.R. Passenger Corp., 422 F. Supp. 2d 504, 508–09 (E.D. Pa. 2006) (granting summary judgment for defendant where plaintiff cited a lone stray remark by a non-decisionmaker made a year and a half prior to plaintiff's termination, thus failing to establish a *prima facie* case under USERRA); see also Starr v. QuikTrip Corp., 655 F. App'x 642, 646 (10th Cir. 2016) (holding that anti-military comments by supervisors did not show discriminatory animus where they were isolated remarks unrelated to the disputed employment action).

Here, Plaintiff refers to a single comment made by Undersheriff Bay to Officer Hanratty in 2014, while Plaintiff was currently on a three-month deployment.  Plaintiff does not contend that he suffered

---

[5]    I note that Undersheriff Bay disputes this version of the facts.  He contends that Hanratty had signed up, without rhyme or reason, to take every single course offered for in-service training, and Bay pulled him aside in an effort to mentor him about how much training was reasonably possible, particularly with Hanratty's military service.  Bay stated that he never told Hanratty that his military service would cause him to be held back.  (Bay Dep. 52:4–60:22.)

any discrimination, lost opportunities, or other adverse employment consequences during that 2014 deployment, or in the ensuing years until his next deployment in 2017. Moreover, in the five-year span between the alleged comment and the date of the promotion decision, Plaintiff has not identified a single additional anti-military comment made by a decisionmaker at GCSO. Given the temporal remoteness of Bay's lone, stray remark, it is insufficient to defeat the Motion for Summary Judgment.

4.   Conclusion as to the 2019 Promotional Opportunity

In short, Plaintiff has failed to meet his burden under the first prong of USERRA. "The purpose of this area of the law is not to second guess or show that defendant made the wrong decision in choosing among qualified applications . . . . It is to identify claims that have a sufficient evidentiary basis to permit the finder of fact to consider whether the adverse employment action was motivated at least in part by improper discrimination." Lucas v. Cnty. of Allegheny, No. 05-cv-760, 2007 WL 2752143 (W.D. Pa. Sept. 17, 2007).

Here, Plaintiff neglected to submit a timely letter of interest due to his failure to update his address with the NJCSC. Nevertheless, Defendants still included him in their consideration for the sergeant position. Ultimately—as was permissible under the Rule of Three—Defendants selected Officer Broadbent for the role. Plaintiff presents no evidence on which a jury could infer that his military service was a substantial or motivating factor for this decision. He does not allege that Officer Broadbent was not qualified for the position or that Defendant's decision to promote him was unsubstantiated. Nor does he provide any evidence—taken from the approximately ten years that he was employed with the GCSO prior to his 2017 deployment—that he had demonstrated better leadership skills, that his writing skills were superior, or that he was equally well-liked by others. Finally, other than a singular comment by Undersheriff Bay to another officer in 2014, Plaintiff does not offer any evidence reflecting Defendants' animus towards Plaintiff's military status. By all accounts, Defendants simply decided that Broadbent was a better candidate for the job. Plaintiff's subjective belief or personal opinion that it must have been

his military deployment that cost him the promotion is insufficient. [6] See Vega-Colon v. Wyeth Pharms.,

625 F.3d 22, 28 (1st Cir. 2010).

**B.**      **The November 2018 Notice of Promotional Examination**

Plaintiff next contends that Defendants discriminated against him by failing to notify him of the

2018 promotional test.  Plaintiff reasons that, on November 26, 2018—while he was still deployed—

GCSO Detective Will Tappin terminated his access to PowerDMS, thus precluding his ability to obtain

notice of the examination and, in turn, to be eligible for promotional opportunities.  Plaintiff contends

that Tappin was never disciplined, counseled, or issued retraining for his actions.

The undisputed facts, however, belie Plaintiff's theory.  The parties agree that the GCSO

circulated the November 2018 Promotional Announcement on November 1, 2018 both by email and

PowerDMS.   The  Promotional  Announcement  specifically  provided  that  all  applications  for  the

examination  had  to  be  submitted  by  4:00  p.m.  on  November  21,  2018.   Plaintiff  admits  that  the

Promotional Announcement came to his email but contends that, due to his deployment, he had limited

access to his email—a fact that does not impute any discriminatory animus to Defendants.  Moreover,

Plaintiff also admits that his access to PowerDMS was not terminated until November 26, 2018, twenty-

five days after the issuance of the Promotional Announcement and five days after applications were due.

Finally, the undisputed facts show that Plaintiff did not even attempt to access his PowerDMS Account

---

[6]      Defendants re-raise the argument, addressed in my Memorandum Opinion on the Motion to Dismiss, that under
New Jersey state law, Plaintiff is required to be a New Jersey resident for purposes of his law enforcement position.  See
N.J.S.A. 52:14-7(a) ("Every person holding an office, employment, or position . . . with a county municipality, or other
political subdivision of the State . . . shall have his or her principal residence in this State . . .).  They posit that failure to
maintain such residence is cause for removal from the eligibility list.  See N.J.A.C. 4A-4.7(a)(7).  Because Plaintiff
admits that he moved out of New Jersey, Defendants urge that he would not be eligible for promotion to Sergeant and,
thus, cannot maintain a USERRA claim.
         Defendants' argument, however, is deficient on two grounds.  First, Defendants still fail to address the provision
of the New Jersey Administrative Code that appears to recognize that lack of residence due to military leave does not
affect eligibility to be certified for a position, as it specifically provides that, "[i]nterested eligibles on military leave shall
continue to be certified.  The appointing authority may consider such eligibles immediately available for appointment
even though reporting for work may be delayed."  N.J.A.C. 4A:4–4.6(a).
         Second, qualification for a position is only relevant under the second prong of the USERRA inquiry, meaning
that the burden falls on the defendant to prove that regardless of the plaintiff's military service, it would have taken the
adverse action.  Carroll, 843 F.3d at 132.  Defendant has not produced any evidence that any decisionmaker relied on
these statutes and Plaintiff's lack of a New Jersey residence in determining that he should not be offered the promotion.

at any point between June 2, 2017 and March 15, 2019.  Once the GCSO was notified of the problem, it restored Plaintiff's access to the system on March 19, 2019.   Yet, Plaintiff still did not view the Promotional Announcement until July 16, 2019.  (DSUF ¶ 123; PR ¶ 123.)

Simply put, even assuming that Detective Tappin acted improperly in terminating Plaintiff's access to the PowerDMS, no reasonable jury could find a causal connection between Tappin's actions and Plaintiff's missing the Promotional Examination in May 2019, such that Plaintiff's subsequent ineligibility for several promotions can be linked to any discriminatory animus.

  **C.**  **<u>Plaintiff's Assignment Upon Return from Military Duty</u>**

The last portion of Plaintiff's USERRA claim contends that upon his return from deployment, he was not assigned to the same position, in violation of USERRA's provisions.

Under USERRA, an eligible servicemember whose period of service exceeds ninety days is entitled to reemployment "in the position of employment in which the person would have been employed if the continuous employment of such person with the employer had not been interrupted by such service, or a position of like seniority, status and pay, the duties of which the person is qualified to perform."  38 U.S.C. § 4313(a)(2)(A).

The applicable regulations provide guidance on this provision.  "As a general rule, the employee is entitled to reemployment in the job position that he or she would have attained with reasonable certainty if not for the absence due to uniformed service.  This position is known as the escalator position."  20 C.F.R. § 1002.91.  "The principle behind the escalator position is that, if not for the period of uniformed service, the employee could have been promoted (or, alternatively, demoted, transferred, or laid off) due to intervening events."  <u>Id.</u>  Once the "escalator position" is determined, the employer must consider various factors before determining the appropriate reemployment position, such as length of service, qualifications, and disability.  <u>Id.</u> § 1002.192.  "The reemployment position may be either the escalator position; the pre-service position; a position comparable to the escalator or pre-service position; or, the nearest approximation to one of these positions."  <u>Id.</u>  The reemployment position includes the

seniority, status, and rate of pay that an employee would have ordinarily attained in that position given his or her job history. Id. § 1002.193. The "escalator principle" can result in adverse consequences when an employee is reemployed, and may involve transfer to another shift or location, more or less strenuous working conditions, or changed opportunities for advancement. Id. § 1002.194.

Plaintiff contends that, prior to his deployment, he was a Sheriff's Officer assigned to twelve-hour shifts in the Transportation Unit, resulting in an eighty-four hour pay period. Upon his return from deployment, however, Plaintiff was reemployed as a Sheriff's Officer in the Court Security Unit, which does not have the extra four hours of straight time per pay period. Accordingly, Plaintiff contends that he was not returned to a position with the same pay.

Again, the undisputed facts establish no USERRA violation. Undersheriff Knestaut explained—and Plaintiff presented no contrary evidence—that the GCSO's Transportation Unit has a limited number of twelve-hour shifts that are awarded on an annual basis following a bidding process set forth in the Collective Bargaining Agreement for Sheriff's Officers. (Knestaut Decl. ¶ 3.) For each of the day shift and night shift, the GCSO awards bids to four officers and two sergeants—for a total of eight officers and four sergeants—to be able to work the twelve-hour shifts. (Id. ¶ 4.) Bidding for these shifts is done annually. Therefore, even if an officer won bids previously, there is no guarantee that he/she will win future bids. (Id. ¶ 10.) Bidding is not based upon seniority but rather upon other criteria such as prior year attendance and prior year disciplinary history. (Id.)

In November 2015 and November 2016, Plaintiff bid for and was awarded the twelve-hour shift beginning in January of the of the year following the bid. (Id. ¶ 6.) As such, in 2016 and 2017, Plaintiff worked in the Transportation Unit on an eighty-four hour shift. (Id.) Because Plaintiff left on deployment in April 2017 and did not return until July 2019, he was unable to submit a bid for 2018 or 2019. (Id. ¶¶ 7–8.) When Plaintiff returned from military leave, the GCSO could not put him back in the

Transportation Unit without pulling one of the officers that had won his/her bid in 2019. [7]  Thus, he was reemployed as a Sheriff's Officer and assigned to the Court Security Unit at the same rate of pay but with only eighty hours per pay period.  (Id. ¶ 9.)  Several months after his return, in November 2019, Plaintiff had the opportunity to bid for a twelve-hour shift assignment in 2020, and was awarded that assignment.  (Id. ¶ 11.)

       Given this undisputed record, Plaintiff has not met his burden showing that a reasonable jury could infer that his military service was a substantial or motivating factor in the employment decision.  Plaintiff's "escalator position" was his role as a Sheriff's Officer.  This is the job he would have attained with reasonable certainty if not for the absence due to uniformed service.   USERRA does not require that he receive the same *assignment* within that position, particularly when, even without his deployment, he was not guaranteed that assignment from year to year.   Indeed, the "escalator principle" recognizes that reemployment after military service can result in adverse consequences including transfer to another shift or location.  20 C.F.R. § 1002.194.  Notably, there is no evidence that Plaintiff, despite having knowledge of the bid process, made any attempt during his deployment to bid for an eighty-four hour shift upon his return in 2019.  Plaintiff  also admitted that he did not believe that there was anybody that was awarded a bid for the 2019 shifts that should not have received that bid.  (Young Dep. 84:10–13.)  Plaintiff does not deny that, within months of his return, he was able to successfully bid upon an assignment within the Transportation Unit.  Finally, Plaintiff admits that at no point was he guaranteed this assignment since, even though he had the eighty-four hour shift all through 2020, he put in a bid for 2021 and was not awarded the bid.  (Young Dep. 86:5–8.)  As such, Plaintiff presents no facts upon

---

[7]      In an effort to rebut these facts, Plaintiff cites to his own testimony where he claims to have, in the past, seen the GCSO temporarily assign individuals to the Transportation Unit.  Plaintiff admitted, however, that he was not seeking a temporary assignment.  (Young Dep. 83:6–15.)

      Moreover, Plaintiff mischaracterizes Lieutenant Fell's deposition testimony as stating that he was not aware of any reason why Plaintiff could not be put back into the transportation unit when he returned.  (Fell Dep. 35:10–13.)  Read in context, Lieutenant Fell actually testified that Plaintiff was not placed back into the Transportation Unit because all shifts were full and there was no manpower needed on the Transportation Unit.  (Id. at 35:3–9.)

which a reasonable jury could conclude that Plaintiff's assignment to the eighty-hour Court Security Unit upon his return from deployment was retaliation for his military service.

## IV.     CONCLUSION

For all of the foregoing reasons, I find that Plaintiff has failed to meet his burden of creating a genuine issue of material fact on whether his military service was a substantial or motivating factor in any of the challenged employment decisions.  As no reasonable jury could find in favor of Plaintiff on his USERRA claims, I will grant Defendants' Motion for Summary Judgment in its entirety.

**BY THE COURT:**

**_/s/ Mitchell S. Goldberg_____**

**Date:**   <u>**March 15, 2023**</u>          **MITCHELL S. GOLDBERG, J.**